IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT SKOWRONEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-748 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 17th day of September, 2020, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 31) filed in the above-captioned matter on February 11, 2020,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 29) filed in the above-captioned matter on January 12, 2020,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.  Background**

Plaintiff Scott Skowronek protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, and for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f, effective

March 6, 2017, claiming that he became disabled on February 10, 2017, due to lymphedema, scrotaledema, reactive airway disease, and anemia. (R. 125, 346-61, 378). After being denied initially on June 13, 2017, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on October 4, 2018. (R. 285-89, 290-94, 295-96, 232-64). On October 26, 2018, the ALJ issued a decision partially granting and partially denying Plaintiff's request for benefits. Specifically, the ALJ found that Plaintiff was disabled from February 10, 2017 through April 17, 2018, but that his disability ended after that date because medical improvement related to his ability to work occurred on April 18, 2017. (R. 125-38). The Appeals Council declined to review the ALJ's decision on April 19, 2019. (R. 1-4). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.

1995)).  However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'"  Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period.  See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the disability claim will be denied.  See Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment.  See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic

work activities." 20 C.F.R. §§ 404.1522, 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

However, even if a claimant is found to be disabled, pursuant to 20 C.F.R. § 404.1594, the SSA is required to determine whether "there has been any medical improvement in [the

y

claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." Id. at § 404.1594(a).

> Medical improvement is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s).

Id. at § 404.1594(b)(1). If the ALJ finds that there has been such a decrease in the severity of the claimant's impairments, he or she must determine whether this has led to an increase in the claimant's functional capacity to do basic work activities. See id. at § 404.1594(b)(3). A previously disabled claimant who experiences such medical improvement and an increase in functionality may no longer be entitled to disability benefits. See id. at § 404.1594(g).

### III.     The ALJ's Decision

In his October 26, 2018 decision, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2021. (R. 129). The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of February 10, 2017. (Id.). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had several severe impairments, specifically obesity, lymphedema, asthma, obstructive sleep apnea, and hypertension. (Id.). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three, and therefore moved on to Step Four. (Id.).

At that step, The ALJ found that Plaintiff retained the RFC to perform sedentary work, except that he was further restricted as follows:

- He cannot stand in the same position for more than thirty minutes at a time; and
- Every four hours, he must be able to take a break to lay down and raise his legs above the level of his heart for a minimum of ten minutes; and
- His workday should not exceed eight hours; and
- He occasionally requires the use of a walking stick; and
- He will be off-task more than fifteen percent of an average workday.

(R. 129-33).  The ALJ found that Plaintiff was unable to perform his past relevant work; therefore, he moved on to the next step.  (R. 133).  At Step Five, the ALJ used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform.  The VE testified that, based on Plaintiff's age, education, work experience, and RFC, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform, specifically because employers would not tolerate an employee being off-task more than 15 percent of the time.  (R.133-34, 262).  Accordingly, the ALJ found that Plaintiff was under a disability from February 10, 2017 through April 17, 2018.  (R. 134).

The ALJ went on to find, however, that medical improvement had occurred as of April 18, 2018, and that the medical improvement was related to Plaintiff's ability to work because it resulted in an increase in his RFC.  (R. 135).  Specifically, the ALJ found that Plaintiff's RFC was the same as before April 18, except that he would no longer be off-task more than fifteen percent of the time.  (R. 135-36).  He found that Plaintiff was still not capable of performing his past relevant work, but found, in light of the VE's testimony and based on Plaintiff's age, education, work experience, and RFC, that Plaintiff could perform jobs that exist in significant numbers in the national economy, including the representative occupations of surveillance systems monitor, election clerk, and order clerk.  (R.136-37).  Accordingly, the ALJ found that Plaintiff's disability ended as of April 18, 2018.  (R. 137).

## IV. Legal Analysis

Plaintiff argues that the ALJ's determination that he underwent a medical improvement beginning on April 18, 2018, and that this improvement increased his functional capacity to perform work is not supported by substantial evidence. The Court agrees and, accordingly, remands for reconsideration of this issue.[1]

As noted, the ALJ found, pursuant to 20 C.F.R. § 404.1594, that medical improvement had occurred as of April 18, 2018, and that the medical improvement was related to Plaintiff's ability to work because it resulted in an increase in his RFC. In support of this finding, the ALJ relied heavily on an April 18, 2018 letter from one of the physicians treating Plaintiff's lymphedema, Atilla Soran, M.D., indicating that Plaintiff was experiencing improvement in his lymphedema with the use of a compression pump. (R. 712). The ALJ also cited a March 14, 2018 medical record noting minimal swelling in Plaintiff's legs (R. 942) and records from May and June of 2018 that failed to note tenderness of the abdomen or abnormality of gait or station (R. 729, 740). He further noted that Dr. Soran required only a six-month follow up appointment (R. 712), which the ALJ found to be indicative of stability and improvement of symptoms. As a result of this improvement, he made one change to the RFC he had previously found; he eliminated the restriction that Plaintiff would be off-task more than 15 percent of the average workday. (R. 129, 135). This change was enough for the VE to find jobs in the national economy that Plaintiff could perform and for the ALJ to find that Plaintiff was, therefore, no longer disabled under the Act. (R. 137).

The ALJ is correct, of course, that medical improvement related to a claimant's ability to work can render the claimant no longer disabled. However, "[a] determination that there has

---

[1] The Court does not reach Plaintiff's argument regarding the impact of the phrase "minimum of ten minutes" in relation to Plaintiff's need to raise his legs every four hours contained in the RFC. The ALJ should consider further clarifying this restriction on remand.

been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1). Moreover, the decrease in the severity of the claimant's impairments must have led to an increase in the claimant's functional capacity to do basic work activities. See id. at § 404.1594(b)(3). Although the ALJ did cite to medical records in making his findings, it is not clear how the records to which he cited satisfies this standard.

It is important to remember that the ALJ originally included in the RFC the limitation that Plaintiff would be off-task more than 15 percent of the time to account for Plaintiff's fatigue. (R. 132). None of the records to which the ALJ cited demonstrate improvement in the symptoms, signs, and/or laboratory findings relating to Plaintiff's fatigue. Moreover, it is not clear that they demonstrate any level of medical improvement that would impact Plaintiff's ability to work. For instance, the statement in Dr. Soran's April 18 letter that Plaintiff "was beginning to see some results" with the use of a compression pump, was identical to what he had said in September of 2017, and what he would say again in October of 2018. (R. 711, 712, 921). In all three letters, Dr. Soran indicated that, while some improvement had occurred, he was still adjusting the pressure level of Plaintiff's pump, indicating that there were still on-going concerns. The restrictions Dr. Soran imposed were similar in all three letters and, if anything, he increased the restrictions on April 18 in regard to how long Plaintiff could stand in one position or place at a time. It is not clear why the ALJ read the middle of these three letters as uniquely expressing medical improvement to the extent that Plaintiff would not experience the fatigue requiring him to be off-task 15 percent of the time, particularly since the letters do not discuss fatigue at all.

The ALJ also cited to records that he believed demonstrate improved conditions upon examination. He cited the May 7 and June 27 records, for example, as evidence that doctors were no longer noting swelling of the abdomen or abnormal gait or station. (R. 729, 740). However, the reason for these examinations was cold and sore throat symptoms Plaintiff was experiencing. (R. 726, 737). There is no indication that doctors were looking to make any specific findings regarding Plaintiff's ability to use his legs, much less his level of fatigue. While the March 14, 2018 record to which the ALJ referred does indicate minimal swelling, it is not at all clear that it was intended to indicate any permanent type of improvement. It is noteworthy that the records do, in fact, show a return of the swelling just a few months later. (R. 721). Moreover, again, none of these records address Plaintiff's fatigue, which was the stated basis for including the off-task limitation in the first place.

The Court does not find that the record necessarily shows an absence of medical improvement that would impact Plaintiff's ability to work. However, the Court finds that the evidence upon which the ALJ relied in so finding, without further explanation, is insufficient to support such a finding.

## V.   Conclusion

In short, the Court holds that the finding of the ALJ that Plaintiff, on April 18, 2018, experienced medical improvement related to his ability to work is not supported by substantial evidence. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch  
United States District Judge

ecf:          Counsel of record